CLARA LEVINE vs. FANNY RAMLER.

Suffolk.   November 10, 1949. — December 23, 1949.

Present: QUA, C.J., LUMMUS, RONAN, & WILKINS, JJ.

*Will*, Revocation, Revival.

After a will which did not appear to have been made in contemplation of
marriage became revoked under G. L. (Ter. Ed.) c. 191, § 9, by a sub-
sequent marriage of the testator, it could not be revived by oral state-
ments thereafter made by him to the effect that he intended the will
to remain effective, even though he had been divorced in the meantime.

PETITION, filed in the Probate Court for the county of
Suffolk on July 15, 1948, for proof of the will of Israel
Ramler, late of Boston.

The petition was heard by *Mahoney*, J.

*E. H. Chayet*, (*M. Rosenthal* with him,) for the petitioner.

*J. F. Connolly*, (*M. B. Holsberg* with him,) for the
respondent.

LUMMUS, J.   On August 1, 1928, Israel Ramler, then an
unmarried man, made his will, giving all his property to
his sister, Clara Levine, and appointing her executrix of
his will.   The will did not mention any contemplated
marriage.   On July 4, 1932, he married Dora Rubin.   On
October 9, 1933, Dora Ramler, formerly Rubin, filed a libel
for divorce against him, and on February 16, 1934, ob-
tained a decree nisi for divorce, which under the statute
became absolute on August 16, 1934.   On July 8, 1948,
Israel Ramler died, leaving his mother, Fanny Ramler, as
his only heir.   Clara Levine petitioned for proof of the
will.   The Probate Court found "that said instrument was
executed before the marriage of said testator and was not
made in anticipation of said marriage," and disallowed it.
Clara Levine appealed.

At the hearing in the Probate Court Clara Levine testified
that her brother said to her in 1941, "If anything should

happen to me . . . I have made will way back and I take care of it and I don't want anybody to have anything to come in, all the things is yours, everything is what I have and you know we work for is yours." She testified that on the day of his death he said to her, "Remember Clara, we work all together, we work very hard, and yours is, when I say I want to go true is my will, remember what I said." The husband of Clara Levine testified that in 1943, when he was leaving for military service, Israel Ramler said to him, "Don't worry about anything at home here for I made a will some years back taking care of you and your wife and you have nothing to worry about, everything that I have is yours and your family's." There was also evidence that Israel Ramler was brought into court for failure to support his mother in 1940, and was compelled to pay $5 a week for her support.

The appellant states the issue as follows: "When a testamentary instrument is made, not in contemplation of marriage, and marriage thereafter occurs, and then a divorce, will the law give validity to the subsequently expressed declarations of the testator that the said testamentary instrument is his will and admit the said will to probate?"

General Laws (Ter. Ed.) c. 191, § 9, which originated in St. 1892, c. 118, provides, with a single exception, inapplicable to the present case, relative to the exercise of a power of appointment, that "The marriage of a person shall act as a revocation of a will made by him previous to such marriage, unless it appears from the will that it was made in contemplation thereof." The statutory doctrine just stated was not altogether new in our law. *Hertrais* v. *Moore, ante,* 57. In *Swan* v. *Hammond,* 138 Mass. 45, an unmarried woman made her will, then she married, and afterwards died. It was held that her will was revoked by the marriage.

We think the statutory revocation of the will took effect upon the marriage, and that the will could not be revived by evidence that the testator nevertheless intended it to

remain valid, notwithstanding the marriage. In *Nutt* v. *Norton,* 142 Mass. 242, 245, the testatrix, after making her will, married and had a child. Morton, C.J., said, "Upon these facts, a revocation of the will is implied by law, and this implication cannot be rebutted by parol evidence that the parties did not know the rule of law, or that they did not intend that the subsequent marriage and birth of a child should operate as a revocation." *Williams* v. *Williams,* 142 Mass. 515, is not in point, for the statute above cited governs the present case.

*Decree affirmed.*